| United States District Court | Southern District of Texas |
|---|---|

Ronald Acreman, §
　　　　　　　　　　　　§
　　　　Petitioner, §
versus § Civil Action H-03-3156
　　　　　　　　　　　　§
Doug Dretke, §
　　　　　　　　　　　　§
　　　　Respondent. §

# Opinion on Dismissal

　　　　Ronald Acreman, a state prison inmate, applies for habeas corpus relief from a felony conviction. 28 U.S.C. § 2254. Dretke moves for summary judgment. Dretke maintains that Acreman filed this application more than one year after the limitation period began. 28 U.S.C. § 2244(d).

　　　　On October 12, 1994, the state court sentenced Acreman to 17 years in prison for sexually assaulting Cheryl Leroy. Acreman appealed his conviction and the Texas Fourteenth Court of Appeals affirmed on August 7, 1997. Acreman petitioned the Texas Court of Criminal Appeals for discretionary review, which it refused on December 10, 1997. On February 1, 1999, Acreman applied for habeas corpus relief in this court. *See Acreman v. Johnson*, No. H-99-360. Acreman applied in state court for habeas corpus relief on June 8, 1999, while the federal application was pending. This court dismissed the prior federal application for non-exhaustion of state court remedies on September 28, 1999. The Texas Court of Criminal Appeals denied state habeas corpus relief on June 18, 2003. Acreman filed this federal application on August 7, 2003.

　　　　Acreman raised five points of error:

　　　　1. The State knew or should have known that Leroy committed perjury. Leroy falsely testified that (a) Acreman abducted her from the parking and (b) she sustained received vaginal scarring, two miscarriages, and a total hysterectomy from the assault.

　　　　2. The State failed to produce Leroy's exculpatory medical records in response to a

discovery request.

3. The State knowingly suborned perjury from Patricia Irving.

4. The State failed to produce the identity and existence of investigator Tom Lockhart in response to a discovery request.

5. Trial counsel was ineffective because (a) he allowed a conflict of interest to interfere with his duty to secure exculpatory evidence and (b) he did not adequately cross-examine Leroy and Irving and did not object to inadmissible testimony.

Under the statute of limitations, Acreman's conviction became final on March 10, 1998. That date is the conclusion of direct review of Acreman's conviction. 28 U.S.C. § 2244(d)(1)(A). Absent tolling, the one-year limitation period ended on March 10, 1999. The pendency of Acreman's state writ application did not toll the limitation period because he did not file it until after the limitation period had expired. *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000). The prior federal application did not toll the statute of limitations. *Duncan v. Walker*, 533 U.S. 167 (2001). Acreman applied for habeas corpus relief in this court more than three years late. Even if this court equitably tolled the statute of limitations while Acreman's first federal application was pending—which would mean that the state writ application tolls the statute of limitations under 28 U.S.C. § 2244(d)(2)—this application would be more than a week late.

Acreman argues the limitation period should start after the conviction became final. He says he did not discover the factual predicate of most of the claims until August 1, 1998, invoking 28 U.S.C. § 2244(d)(1)(D). On that date, he encountered Robert Holzwarth in prison. Holzwarth was convicted of assaulting Leroy in the same incident which underlies Acreman's conviction. Leroy had sued Holzwarth and Acreman in civil court. Acreman says he learned the facts of his claims from Holzwarth when he told Acreman about the civil suit and let Acreman read the papers in the suit.

This court granted Dretke's first motion for summary judgment (10) as to claims 2, 4, and 5(a), and denied without prejudice as to claims 1(a), 1(b), 3, and 5(b). Dretke did not address Acreman's factual-predicate argument in his first summary judgment motion. This court invited Dretke to move again for summary judgment under the statute of limitations on the remaining claims and address the factual predicate argument, which he did (15).

The statute says that the limitations clock starts when "the factual predicate … could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The limitations clock does not start when the petitioner discovers the facts about his claims, but when he should have discovered them.

Acreman knew at trial that it was disputed whether he abducted Leroy from the parking lot of the club where they met or she left willingly. Along with this, it was disputed whether Leroy acted like a kidnap victim when they stopped at the gas station where Irving worked. At trial, Acreman also knew there was a question whether Leroy had consensual sexual intercourse with him and Holzwarth or they roughly raped her so that they could have caused vaginal scarring, a miscarriage, and a hysterectomy. If Leroy willingly left the club with him and said that in statements given soon after the incident and at trial, Acreman knew that Leroy and Irving were possibly lying at trial. These facts and inconsistencies underlay Acreman's potential claims that the prosecutor knew that Leroy and Irving were lying at trial, and that counsel should have been more vigorous in his cross-examination. That Acreman did not draw these conclusions supporting his claims does not matter. The limitations clock does not start when a petitioner understands the legal significance of the predicate facts. It starts when he is aware or should be aware of the facts underlying his potential claims such that he should investigate.

Acreman maintains that he did not know about the specific written statements and other records supporting his claims until he ran into Holzwarth. Acreman says he first learned that Leroy had given statements which showed that she had willingly left the parking lot and that she had vaginal scarring, a miscarriage, and a hysterectomy when he read Holzwarth's papers in the civil lawsuit. However, he knew enough from the trial to know that it was disputed that Leroy willingly left the parking lot with him and may have told someone this and that the rape may have been rough enough to cause injury and medical problems. Acreman's presence during the incident underlying the prosecution, the evidence at trial, and the inconsistencies, provided the basic information he needed to pursue his claims. Under due diligence, Acreman could have discovered the specific information required to support his claims before he saw Holzwarth.

Acreman's lawyer here says Acreman did not receive any copies of the pleadings and discovery in the civil case (20, p.1). In Acreman's statement attached to his lawyer's response

(19, p. 3), he says "It was only through Holzwarth that I was able to obtain the civil documents as well as the criminal reports. I could not afford an attorney when the complainant sued me in civil court." Dretke says, without dispute, that Acreman was served citation in the civil suit on December 19, 1995 (15, p. 5), citing *Ex Parte Holzwarth*, State Writ Application No. 56,175-01, pp. 95, 138. When Acreman received this notice of the civil lawsuit, he should have tried to get copies of the pleadings in the lawsuit. He says in his declaration that his "limited understanding of the civil process was that the other attorneys in the case were required to forward [him] any discovery documentation. [He] never received any of these documents and was left with the belief that none had yet been produced." Acreman should have pursued the matter and not relied on his own untrained understanding of the law. Acreman has not shown due diligence.

The state court convicted Acreman on July 1, 1994. Leroy sued Acreman in civil court and served him with a citation on December 19, 1995. He filed this federal application on August 7, 2003, nine years after he was convicted. He knew in the state court trial the essential facts pointing to the factual underpinning of his claims. As a separate mater, when Acreman was notified of the civil suit, he should have attempted to learn about the lawsuit and get copies of the papers. Section 2244(d)(1)(D) starts the limitation clock after the conviction is final only "if vital facts could not have been known." *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000). Given Acreman's presence during the incident and the trial, and his early knowledge of the civil lawsuit, he has not shown he was unable to discover the factual predicate of his claims sooner.

On Dretke's motion for summary judgment (10, 15), this application is dismissed.

Acreman has not shown that reasonable judges "would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). A certificate of appealability should not issue.

Signed April 22, 2005, at Houston, Texas.

Lynn N. Hughes   USDJ
United States District Judge